IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY FENBERG,<br><br>    Plaintiff,<br><br>  v.<br><br>COWDEN AUTOMOTIVE LONG TERM DISABILITY PLAN,<br><br>    Defendant.<br>_____/ | No. C 03–3898 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

On October 3, 2008, the Court heard oral argument on the parties' cross-motions for summary judgment. Having considered the papers submitted, and for good cause shown, the Court DENIES plaintiff's motion and GRANTS defendant's motion.

**BACKGROUND**

In its May 24, 2005 order granting plaintiff's motion for summary judgment, this Court summarized the facts of this case as follows:

> Plaintiff Larry Fenberg was the General Manager of Cowden Automotive from 1995 until late February, 2002. As an employee of Cowden Automotive, plaintiff was covered under Cowden Automotive's Group Long-Term Disability Plan, issued by Reliance Standard Life Insurance Company. Plaintiff was terminated in February, 2002 by the president of Cowden Automotive for not "following company policies."
> Plaintiff had been HIV positive for "7 or 8" years as of February, 2002. Administrative Record ("AR") 105. After his termination, plaintiff applied for long term disability benefits under the plan based on depression, HIV, and various physical ailments. Defendant Plan denied benefits on August 6, 2002, asserting that plaintiff became disabled only after he lost eligibility due to termination of employment. Plaintiff appealed the decision, which was denied by defendants. Thereafter, plaintiff filed an action in this Court, claiming failure to pay benefits due under 29 U. S.C. § 1132(a)(1)(B). On motion brought by plaintiff, this Court previously determined that the proper standard of review in this case was de novo.

*Fenberg v. Cowden Automotive Long Term Disability Plan*, No. 03-3898, 2005 WL 1225746, at *1 (N.D. Cal. 2005). The parties brought cross-motions for summary judgment on the merits of plaintiff's claim and this Court granted plaintiff's motion for summary judgment and denied defendant's motion for summary judgment. Defendant appealed the decision. By memorandum decision filed December 17, 2007, the Ninth Circuit reversed and remanded. The Ninth Circuit held that Rhode Island law governed the Cowden Automotive Long Term Disability Plan ("the Plan"), that the Plan contained a valid provision granting Reliance Standard Life Insurance Company ("Reliance") discretion to determine a claimant's eligibility for benefits, and that this Court must review Reliance's decision for abuse of discretion. *Fenberg v. Cowden Automotive Long Term Disability Plan*, Nos. 05-17192, 06-15132, 2007 WL 4386126, at *1 (9th Cir. 2007). The issue before the Court today is whether Reliance's decision to deny benefits to plaintiff was an abuse of discretion.

**LEGAL STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.1991). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues

of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## DISCUSSION

### I.   Standard of Review

#### A.   Standard of review: abuse of discretion

In a recent decision, the Supreme Court considered the appropriate standard of review for a reviewing court to apply in ERISA cases when the entity that administers the plan both determines whether an employee is eligible for benefits and pays employee benefits. Holding that such a situation creates a conflict of interest, the Court instructed reviewing courts to "consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; [] the significance of the factor will depend upon the circumstances of the case." *Metropolitan Life Insurance Company v. Glenn*, __ U.S. __, 128 S. Ct. 2343, 2346 (2008). The Court noted that a conflict of interest will be an important factor when "circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 2351. On the other hand,

> It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce the potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.*

Ninth Circuit law on conflicts of interest in ERISA cases is consistent with *Glenn*. In *Abatie v. Alta Health & Life Insurance Company*, the Ninth Circuit explained that where an ERISA plan grants discretion to a plan administrator, courts review the plan's decisions for abuse of discretion, but that this review is "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." 458 F.3d 955, 967 (9th Cir. 2006) (en banc). The greater the conflict, the greater the "level of skepticism" a court must apply. Relevant to this inquiry are, among other things, the degree of an insurer's conflict and any failure to comply with procedural requirements. *Id.*

3

A conflict of interest exists in this case because Reliance was both the claim administrator and payor of benefits. The Court must therefore determine the significance of this conflict. According to defendant, Reliance has taken steps to reduce the risk of bias from its conflict of interest. Claim personnel are not paid bonuses based on the number of claims denied. (Decl. of Richard Walsh in Support of Cross-Mot. for Summ. J. by Def., at ¶ 4.) Claims personnel have no access to information about a policy holder's finances or profitability. *Id.* at ¶ 5. Their performance reviews and compensation are based on "the timeliness and thoroughness of their actions on claims," not their ratio of claims approved to claims denied. *Id.* at ¶ 6. Appeals are decided by employees who were not involved in the original decision and who do not need authority to grant or deny or an appeal. *Id.* at ¶ 7. Plaintiff does not cite any evidence suggesting that there was an increased likelihood that Reliance's conflict of interest would have led to biased decision making in this case.

It appears that the company has taken measures to prevent those who decide claims from having an incentive to deny them. At the same time, however, defendant does not demonstrate that Reliance has taken steps that would reduce the conflict "to the vanishing point," such as walling off claims administrators from those interested in firm finances, or penalizing inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Under *Abatie*, failure to comply with procedural requirements is another factor courts should weigh in determining the importance of a conflict of interest. Plaintiff alleges that Reliance committed multiple procedural violations in denying plaintiff's claim. Plaintiff argues first that under ERISA regulations, a claim administrator must consult with a health care professional when deciding any claim that is based on medical judgment. The regulation provides:

> (h) Appeal of adverse benefit determinations.
> . . .
> (2) . . . the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures –
> . . .
> (iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment . . . the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

4

29 C.F.R. § 2560.503-1(h)(3), 3(iii).[1]  Reliance's decision to deny benefits depended on a medical judgment: the date that plaintiff's disability began, and Reliance asserted that it based its decision on letters from plaintiff's doctor, Dr. Goldyn, concerning his condition.  Reliance was not obligated to obtain additional medical evaluations.  *Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723, 724 (7th Cir. 2003).

Second, plaintiff claims that he suffered a procedural violation because Reliance failed to follow its own administrative procedures manual.  The manual provides:

> In deciding the appeal of any *Adverse Benefit Determination* that is based in whole or in part on a medical judgment, the individual conducting the appeal shall consult with a health care professional . . . b) who is neither an individual who was consulted in connection with the *Adverse Benefit Determination* that is the subject of the appeal, nor the subordinate of any such individual.

(Decl. of Vincent Cheng in Support of Mot. for Summ. J. by Plaintiff ("Cheng Decl."), ex. 3, E1.4.) Defendant maintains that the manual contains guidelines that may not be appropriate in every case. Defendant's explanation does not comport with the wording of the manual, which states that the decision maker *shall* consult a medical professional.[2]  Defendant did violate its own administrative procedures when it decided plaintiff's appeal without consulting a medical professional.

Plaintiff also contends that Reliance changed its rationales for its decision, arguing first that plaintiff's disability began after his coverage ended, and later that his condition had not deteriorated to the point that he could not work.  "When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures."  *Abatie*, 458 F.3d at 969. However, plaintiff mischaracterizes the basis for Reliance's denial of the appeal.  On both occasions, plaintiff was denied because Reliance determined that he was not disabled while he was eligible for coverage.

Plaintiff also cites as a procedural violation the letter to plaintiff in which Reliance incorrectly

---

[1] Contrary to defendant's contention, this provision applies to appeals of claims for disability benefits.  *See* 29 C.F.R. § 2560.530-1(h).

[2] At oral argument, defense counsel first characterized this provision as optional.  After consulting the language, he appeared to concede it is mandatory.

5

informed plaintiff that on February 22, 2002 he ceased to meet the "Policy Eligibility Requirements." The Court has already held that this was a "blatant misstatement of the policy." *Fenberg*, 2005 WL 1225746, at *4.

Finally, plaintiff argues that defendant committed a procedural violation by failing to investigate whether plaintiff was disabled. Plaintiff contends that adequate consultation with a medical professional would have revealed that plaintiff was disabled on his last day of work at Cowden. As evidence, plaintiff cites the report of neuropsychologist Dawn Amy Osterweil, who examined plaintiff on June 27, 2008 and submits a report in support of plaintiff's motion. *See* Cheng Decl., ex. 9. A district court may review only the administrative record when considering whether the plan administrator abused its discretion. *Abatie*, 458 F.3d at 971. Although the reviewing court may consider extrinsic evidence on the question of a conflict of interest, *id*, Dr. Osterweil's opinion (six years after the fact) of what Reliance might have found had it conducted a thorough investigation goes far beyond the parameters allowed by *Abatie*.

The Court will apply some skepticism in its abuse of discretion review. Reliance has taken some measures to correct the conflict of interest inherent in both determining eligibility and paying for benefits, but has not insulated its decision-makers from this conflict. In addition, plaintiff has demonstrated that Reliance violated some procedures in its review of his case.

### B.     *Standard of review: de novo*

Despite the Ninth Circuit's reversal of this Court for applying *de novo* review, plaintiff urges the Court once again to review *de novo* Reliance's decision to deny benefits to plaintiff. Plaintiff argues that *de novo* review is appropriate because Reliance's procedural violations were flagrant. *Abatie* held that when a plan administrator commits "flagrant" procedural violations (for example, "fail[ing] to comply with virtually every applicable mandate of ERISA,") *de novo* review is required. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971 (9th Cir. 2007) (en banc). Assuming that *Glenn* did not abrogate this aspect of *Abatie*, the Court finds for the reasons stated above that the procedural violations here were not flagrant. The Court therefore cannot review Reliance's decision *de novo*.

## II.   Merits

Even applying some skepticism to Reliance's decision, the Court cannot say it was an abuse of discretion. Reliance denied benefits to plaintiff based on its conclusion that he became disabled only after he lost his eligibility by being terminated from his job in late February, 2002. Plaintiff claimed that he lost his job because he was disabled and unable to work. Plaintiff told his doctor on March 7, 2002 that he had been fired from his job. Cheng Decl., ex. 1, at RSL 172.[3] Plaintiff's employer, Cowden Automotive, stated that plaintiff was terminated for cause on February 28, 2002. *Id.* at RSL 62, 67. It was not an abuse of discretion for Reliance to credit Cowden Automotive's account of why plaintiff left the company.

Plaintiff claimed that he was disabled by his last day of work at Cowden, while Reliance concluded that he was not disabled on that date. Before February of 2002, plaintiff last saw his doctor, Dr. Goldyn, on December 13, 2001. *Id.* at RSL 174. At that time, Dr. Goldyn treated plaintiff for depression, but there is no indication that he attributed plaintiff's symptoms to HIV-Induced Depressive Disorder.[4] *Id.* After plaintiff left Cowden Automotive, he first contacted Dr. Goldyn on March 5, 2002. *Id.* at 173. On the basis of that telephone call, Dr. Goldyn stated in his notes that plaintiff had a "disability starting today." *Id.* On May 30, 2002, Dr. Goldyn noted that plaintiff's symptoms first appeared on March 1, 2002. *Id.* at 191. On August 30, 2002, Dr. Goldyn faxed Reliance a statement that plaintiff was "totally disabled from working on February 22, 2002," but did not explain the basis for his conclusion that the disability began on an earlier date. *Id.* at 38. It was not an abuse of discretion for Reliance to conclude that plaintiff was not disabled in late February of 2002.

The medical examinations that plaintiff cites as evidence that his disability began before he left Cowden Automotive do not pre-date his last day of work. After his March 5, 2002 phone call with plaintiff, Dr. Goldyn wrote in his notes that plaintiff said he was sleeping poorly, unable to think or eat,

---

[3] "RSL" refers to Reliance Standard's initial disclosures.

[4] Plaintiff states that Dr. Goldyn diagnosed plaintiff with HIV-related Depressive Disorder "as early as November 2001." Plaintiff cites RSL 175-76, but these documents were not included in the exhibits he filed in support of his motion. Plaintiff did include documents labeled RSL 175-176 in support of his December 17, 2004 motion summary judgment [Docket No. 51]. Contrary to plaintiff's assertion, neither of these documents indicates that plaintiff's depression was related to his HIV infection.

United States District Court
For the Northern District of California

and had suicidal ideation. *Id.* at 173. Dr. Goldyn examined plaintiff on March 7, 2002. *Id.* at 172. During that visit, Dr. Goldyn noted that plaintiff was experiencing changes in his sleep pattern, depression, fear, and inability to concentrate, but that suicidal ideation and planning were "not present." *Id.* at 170. On May 30, 2002, Dr. Goldyn concluded that plaintiff was incapable of standing, walking, sitting or driving for a work day; and that he suffered from sleeplessness, agitation, anger, and had trouble concentrating and establishing personal relationships. *Id.* at 189-92. On June 7, 2002, Dr. Goldyn concluded that plaintiff's difficulty establishing personal relationships had led to his firing from Cowden Automotive. *Id.* at 190. Based on an examination on September 27, 2002, Joan Cartwright, a clinical psychologist, diagnosed plaintiff with major recurrent depressive disorder and dementia. *Id.* at 157. None of these medical examinations reveals what plaintiff's condition was in late February, 2002. It was therefore not an abuse of discretion for Reliance to conclude that plaintiff became disabled after his eligibility for benefits ended.

Even looking skeptically at Reliance's review of plaintiff's claim, the Court concludes Reliance did not abuse its discretion in concluding that plaintiff was not disabled when he was terminated from his job.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion for partial summary judgment and GRANTS defendant's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: October 11, 2008

SUSAN ILLSTON
United States District Judge

8